[S. F. No. 8864. In Bank.—February 11, 1919.]

MARYLAND CASUALTY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

CHILD LABOR LAW—EMPLOYMENT OF MINOR—WHEN ILLEGAL.—Under the child labor law (Stats. 1915, p. 1205), the employment of a minor of the age of fifteen years, in places forbidden by that law, is clearly illegal, without the issuance to him, and the presentation to his employer, of an age and schooling certificate by the school authorities after proper investigation and proof to ascertain the truth of the facts therein certified.

ID.—CONTRACT OF EMPLOYMENT—INVALIDITY OF.—A contract employing a minor of the age of fifteen years, in places forbidden by the child labor law, which is entire and requires the employee to work six days in a week during the whole day and while school is in session, is one prohibited by law, and the fact that the employee might have been legally employed after school hours on the day on which he was killed while at work does not cure the illegality.

ID.—PURPOSE OF CHILD LABOR LAW—CONSTRUCTION.—No consideration of the general purposes of the child labor law would justify a departure from its plain provisions, nor is it true that education was the main consideration entering into the law, the main purpose

being to prohibit children under certain ages from engaging in certain forms of labor, and considerations of public health and safety enter into the general plan as well as matters of education.

LIABILITY INSURANCE—VALIDITY OF POLICY.—Where an insurance policy insured against liability for personal injuries, including death, sustained by an employee "legally employed," the invalidity of the contract employing a minor in violation of the child labor law is not waived by the issuance of the policy after knowledge of the accident, the policy not being void *ab initio*, where it insured all employees legally employed and upon the issuance of a proper age and schooling certificate to the employee would have at once attached to the employment, or would apply to any other employee taking the place of the minor employee, and the petitioner having no knowledge of the illegality of the employment and having a right to assume it was legal.

ID.—PRESUMPTION OF INNOCENCE.—The insurer was entitled to indulge in the presumption that the employer was innocent of crime in employing the minor in violation of the child labor law, at least until notice of some fact inconsistent with such innocence.

ID.—ORAL INSURANCE.—Where the application in such case for insurance was oral and the policy was not issued until after knowledge of the accident, the contention that the insurance was oral and therefore did not contain a clause in the written policy confining liability to legal contracts, cannot be sustained; nor is there any significance in the issuance of the policy after the death of the employee, the policy being a continuing liability even after an accident, and the acceptance or retention of the premium under the circumstances does not operate as a waiver.

PROCEEDING in Certiorari instituted in the Supreme Court to review an award by the Industrial Accident Commission. Award annulled.

The facts are stated in the opinion of the court.

John Ralph Wilson and Charles B. Morris, for Petitioner.

Sullivan & Sullivan and Theo. J. Roche and Christopher M. Bradley, for Respondents.

WILBUR, J.—An award was made by the Industrial Accident Commission against the petitioner as insurance carrier of respondents Bornstein and Le Blanc, employers of Frank T. Sharon, a minor of the age of fifteen years and two months, in favor of the mother and sister of the employee,

to compensate them for his death resulting from an elevator accident in the course of his employment. The petitioner claims that the loss is not covered by the terms of its policy of insurance for the reason that said employee was not legally employed, because such employment was in violation of the child labor law in force at the time the policy was issued. The respondents claim that the employment was legal, but, if not, that the provision of the policy excluding liability in cases of illegal employment was waived by the petitioner.

Prior to the accident and on the day that the employee was killed an insurance solicitor, who placed insurance in a number of different companies, for a commission, secured from the employers an agreement to take an insurance policy from the petitioner, covering liability under the workmen's compensation law. The solicitor observed Frank T. Sharon at work and called the attention of the respondent employers to the liability incurred by them under the workmen's compensation law for injuries to such employee, and urged them to take out an insurance policy to cover such liability, and received their verbal consent thereto. Subsequently the solicitor or broker reported to an agent of the petitioner authorized to issue policies the employers' application for this insurance, and requested that the same be issued as of noon, November 14, 1916. No inquiries were made by either the agent of the company in accepting the application or by the broker with reference to the age of Frank T. Sharon, and no statement was made in relation thereto by the employer. The broker had no knowledge of the age of the employee other than that derived by observing him, and no knowledge as to whether or not an age and schooling permit had been issued by the proper authorities. After the accident occurred and in pursuance of the previous arrangement, the petitioner, knowing that an accident had occurred resulting in the death of Frank T. Sharon, nevertheless issued its policy of insurance as agreed, containing the usual provision that it should cover "such injuries, including death, sustained by any employee *legally employed*" by Bornstein and Le Blanc. Petitioner subsequently learned that the decedent at the time of the accident was fifteen years and two months old and that he had been employed without the issuance to him of any age and schooling certificate, as required by section 10 of the

child labor law.  (Stats. 1915, p. 1205.)   Immediately upon learning these facts petitioner notified the employers that they would not waive that fact, and would stand on the terms of the policy.

It is clear from the unambiguous terms of the child labor law that the employment of Frank T. Sharon, a minor of the age of fifteen years, was illegal without the issuance to him, and the presentation to his employer, of an age and schooling certificate (Stats. 1915, p. 1205, sec. 10), by the school authorities after proper investigation and proof to ascertain the truth of the facts therein certified.   Section 13 of the child labor law provides: "Any person, firm, corporation, agent or officer of a firm or corporation that violates or omits to comply with any of the foregoing provisions of this act, or that employs or suffers or permits any minor to be employed in violation thereof, is guilty of a misdemeanor, . . . " (Stats. 1915, p. 1208.)

The accident in question occurred at 4:30 in the afternoon.   Section 10 provides, "No minor of the age of fifteen years shall be employed, permitted or suffered to work in or in connection with any of the places enumerated in section one during the hours the public schools are in session, unless such minor is provided with an age and schooling certificate as herein provided."   Among other places in which employment is prohibited by the provisions of section 1 so referred to is any "manufacturing establishment" or "workshop," which would include the employment in which the decedent was engaged at the time of his death.   It is, therefore, argued that even though the employment during the hours the schools were in session was illegal, without an age and schooling certificate, it was not illegal at the hour in question, for, although the schools of the city were in session November 14th, they had adjourned before 4:30, and that therefore the decedent was not working "during the hours the public schools are in session."   But the contract of employment was an entirety and required the decedent to work six days in a week during the whole day and while school was in session.   The contract was, therefore, one prohibited by the law, and the fact that the decedent might have been legally employed after school hours on the day in question does not alter the fact that the contract of employment in question was illegal and in violation of the plain terms of the law.

Respondents, however, claim that in construing the child labor law the court should look to its purposes, and that as the main purpose is to secure the education of the child, that purpose had been fully accomplished in the case of Frank T. Sharon by reason of the fact that he had entered a public night school on November 13th, and was intending to there continue his education. No consideration of the general purposes of the law would justify a departure from the plain provisions of the law, nor is it true that education was the main consideration entering into the child labor law. The compulsory school law (Stats. 1905, p. 388, and its amendments, Stats. 1907, p. 95; Stats. 1911, p. 949; Stats. 1915, p. 762) provides for the attendance of all children between eight and fifteen years, with certain exceptions. The age and schooling certificate required by the child labor law is also required by the compulsory school law, but the main purpose of the child labor law is, as therein stated, to prohibit children under certain ages from engaging in certain forms of labor. Considerations of public health and safety enter into the general plan as well as matters of education. The employment being illegal, the question remains as to whether the illegality was waived by express agreement or necessary implication at the time the policy was issued, or thereafter. Respondents rely upon the well-established rule that conditions in the policy of insurance which would render it void *ab initio*, under facts known or readily ascertainable by the insurer, are waived by its issuance. But there are two insuperable obstacles to the application of that rule in this case. First, the policy was not void *ab initio*. It insured all employees legally employed, and upon the issuance of a proper age and schooling certificate would have at once attached to the employment in question, or would apply to any other employee taking the place of said employee. Second, the petitioner had no knowledge of the illegality of the employment in question (even assuming that the knowledge of the solicitor of the insurance was the knowledge of the company) and had a right to assume that the contract of employment was legal. For the petitioner was entitled to indulge in the presumption that the employer was innocent of crime, at least until notice of some fact inconsistent with such innocence. Knowledge of the exact

age of the boy would not be inconsistent with innocence, because it was lawful to employ such a boy if provided with proper proof of his age, viz., the age and schooling certificate required by law. While it is true that fire insurance companies that have issued policies without written application and without inquiry have been held chargeable with notice of facts which might have been readily ascertained concerning the condition of the title to the property insured at the time of the issuance of the policy, and therefore to have waived conditions in the policy which would render the policy void by its terms, upon the facts, no case has been found that goes so far as to require the insurance company to ignore the presumption of innocence of crime.

It is urged by respondents that the insurance in question was oral, and that as it applied specifically to the employee it was binding. The utmost that can be said of the verbal agreement, ignoring all questions as to the authority of the agent, which may well be doubted (*Sharman* v. *Continental Ins. Co.*, 167 Cal. 117–124, [52 L. R. A. (N. S.) 670, 138 Pac. 708]), is that it was an agreement to insure or to issue insurance upon the usual terms contained in the company's policies. As was said concerning an agreement to insure by the supreme court of the United States, in *Eames* v. *Home Ins. Co.*, 94 U. S. 621, 629, [24 L. Ed. 298, see, also, Rose's U. S. Notes]: "It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used before between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it." The contention, therefore, that the insurance in question was oral, and therefore did not contain the clause confining liability to legal contracts, cannot be sustained.

There is no significance in the issuance of the policy after the death of the employee, and the cases of fire insurance in which such issuance after a loss have been held to waive certain conditions do not apply to this character of insurance, where the policy is a continuing liability even after an accident, nor, for the same reason, does the acceptance or retention of the premium under the circumstances operate as a waiver.

CLXXIX Cal.—46

On the whole, therefore, the contract of employment, in violation of the child labor law, was illegal and not included in the policy of insurance (*Mt. Vernon etc. Duck Co.* v. *Frankfort etc. Ins. Co.*, 111 Md. 561, [134 Am. St. Rep. 636, 75 Atl. 105]), and there being no waiver or estoppel, the petitioner is not liable under the policy for the accident in question.

The award against the petitioner and the order substituting it for the employers are annulled.

Melvin, J., Shaw, J., Lennon, J., and Angellotti, C. J., concurred.