[Civ. No. 52483. First Dist., Div. Three. Sept. 16, 1982.]

CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, ENGLAND et al., Cross-complainants and Appellants, v. ENGS MOTOR TRUCK COMPANY, Cross-defendant and Respondent.

832

**COUNSEL**

Roswell Bottum and Barry J. Simon for Cross-complainants and Appellants.

George F. Jansen and Faith Jansen for Cross-defendant and Respondent.

## OPINION

SCOTT, J.—Appellants, Certain Underwriters at Lloyds of London, England, by and through Lead Underwriter Stuart Edward James Fulton (hereafter Underwriters), appeal from summary judgment in favor of respondent Engs Motor Truck Company (hereafter Engs) awarding recovery in the sum of $24,919.37, plus interest ($1,405.05), plus costs of suit ($34.50). We reverse.

We briefly summarize the facts. David Clark bought a truck from Engs. Clark obtained a physical damage insurance policy from Underwriters. Among losses expressly excluded from coverage by the policy was loss resulting from a theft of the vehicle by an employee of the insured. Attached to the policy was a loss payable indorsement, which provided in part: "2. *The* insurance under this policy as to the *interest only of the Lien-Holder shall not be impaired* ... *by* any breach of warranty or condition of the policy, or by any omission or neglect, or by the *performance of any act in violation of any terms or conditions of the policy* or because of the failure to perform any act required by the terms or conditions of the policy or because of the subjection of the property to any conditions, use or operation not permitted by the policy or because of any false statement concerning this policy or the subject thereof, *by* the insured or *the insured's employees*, agents or representatives, ... [¶] PROVIDED, however, that the wrongful conversion, ... by the Purchaser, Mortgagor, or Lessee in possession of the insured property ... is not covered under this policy, unless specifically insured against and premium paid therefor." (Italics added.)

For purposes of the summary judgment and this appeal, it is conceded that the truck was stolen by an employee of Clark. After appellants denied that the loss was covered by the policy, Clark brought an action for breach of contract. Appellants cross-complained for declaratory relief, naming Crocker Bank and its successors and assigns, among others, as cross-defendants, as the bank was named as the lienholder in the loss payable indorsement. The bank had assigned to Engs all claims under that indorsement. Engs moved for summary judgment, in part on the ground that although the policy excluded coverage for loss from theft by an employee, the exclusion was inconsistent with the loss payable indorsement and was therefore not controlling. Summary judgment was granted, and this appeal followed.

 It is the rule of *Narver* v. *California State Life Ins. Co.* (1930) 211 Cal. 176, 181 [294 P. 393, 71 A.L.R. 1374], that: "'Endorsements on an insurance policy form a part of the insurance contract [citation], and the policy of insurance with the endorsements and riders thereon must be construed together as a whole [citation].'" At the bottom of the loss payable indorsement before us, it states: "Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the abovementioned policy, other than as above stated." By virtue of this language, it seems clear that, "'Taken by itself, this endorsement means nothing. Of itself, it is not a contract in any sense of the word. By its terms it refers to the main policy . . ., and except as specifically excepted in the endorsement, it put the provisions of the policy into force and effect.'" (*Narver, supra,* at p. 181.) If there is a conflict in meaning between an indorsement and the body of the policy, the indorsement controls. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 431 [296 P.2d 801, 57 A.L.R.2d 914].)

The policy excludes coverage for loss from a theft by an employee; the indorsement provides that the lienholder's interest shall not be impaired by any breach of a condition of the policy, or by any act "in violation of any terms or conditions of the policy . . . ." To find the indorsement controlling and the lienholder covered in this case, we would have to conclude that the theft of the truck was an act in violation of a term or condition of the policy or a breach of condition of the policy.

 "'"It is a fundamental rule that the language of a contract is to be accorded its popular and usual significance. It is not permissible to impute an unusual meaning to language used in a contract of insurance any more than to the language of any other contract."'" (*Carl Ingalls, Inc.* v. *Hartford Fire Ins. Co.* (1934) 137 Cal.App. 741, 746 [31 P.2d 414], citing *Moblad* v. *Western Indemnity Co.* (1921) 53 Cal.App. 683, 685 [200 P. 750].)

 "The terms of a contract of insurance constitute the measure of the insurer's liability and should be construed according to the language used therein. [Citations.] Language which is clear and unambiguous is to be construed according to its plain meaning. [Citation.]" (*Pendell* v. *Westland Life Ins. Co.* (1950) 95 Cal.App.2d 766, 769 [214 P.2d 392].)

■ Respondent's argument that theft of the truck breached a condition of the policy is based on a strained reading of the policy's language. An exclusion or exception in an insurance policy is a refusal by the insurer to assume a particular risk, while a condition provides for avoidance of liability if it is breached. (3 Long, The Law of Liability Insurance (1981) § 17.15, pp. 17-39, 17-40.) The policy at issue here on its face plainly distinguishes between its exclusions and its conditions with unambiguous boldface headings: "EXCLUSIONS" and "CONDITIONS." As is required, the exclusions are stated in clear and unmistakable language: "This Insurance does not cover ...." (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 194 [130 Cal.Rptr. 520, 550 P.2d 1056].) The language of paragraph 2 of the indorsement refers to terms and conditions, not exclusions, and cannot reasonably be interpreted to effectively nullify or waive all those exclusions when the lienholder claims a loss. Thus, we conclude that there is no conflict between paragraph 2 of the loss payable indorsement and the employee theft exclusion and, therefore, that exclusion is not overridden by the indorsement.

The clause of the loss payable indorsement which begins with the word "PROVIDED" does not support respondent's contention that the indorsement is in conflict with the provisions of the body of the policy. This clause merely reiterates another exclusion in the policy and provides the insured with an opportunity to obtain additional coverage for an additional payment.

Respondent's reliance upon *Southwestern Funding Corp.* v. *Motors Ins. Corp.* (1963) 59 Cal.2d 91 [28 Cal.Rptr. 161, 378 P.2d 361] is misplaced. In *Southwestern Funding Corp.*, the loss payable indorsement provided that the loss payee's coverage would not be impaired by "'any breach of warranty or *condition* of the policy,'" or by any "'violation of any terms or *conditions* of the policy ....'" (*Id.*, at p. 93, italics added by the *Southwestern Funding Corp.* court.) The court held that the loss payee was entitled to recover under the policy even though the owner insured was in an accident in Mexico, outside the territorial limits set by the policy. Respondent contends that herein the loss payable endorsement has similar language providing that its interest shall not be impaired by any breach of conditions of the policy. The distinction, however, is evident. In *Southwestern Funding Corp.*, the territorial provision of the policy was an express "condition" of the policy specifically made not applicable to the loss payee. Here, the employee theft provi-

sion was an "exclusion" from coverage. Nothing in the loss payable indorsement can be construed to modify the exclusion.

Having carefully examined the disputed clauses of the loss payable indorsement and the main body of the policy, this court finds no conflict or inconsistency between the two. Thus, the loss payable indorsement does not override the main body of the policy, and the employee theft exclusion is still applicable. ■ It is a controlling principle of contract interpretation that "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. [Citations.]" (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra*, 46 Cal.2d 423, 432.) Observing the admonishment of *St. Paul Fire & Marine Ins. Co.* v. *Coss* (1978) 80 Cal.App.3d 888 [145 Cal.Rptr. 836], this court will not indulge in a forced construction of the insurance policy so as to fasten liability on the appellants which they had not intended nor contracted for.

Judgment is reversed with directions to enter judgment for appellants in accordance with the views herein expressed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied October 5, 1982, and respondent's petition for a hearing by the Supreme Court was denied November 10, 1982. Newman, J., did not participate therein.